IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS. | § § | NO. 3-07-CR-0014-G |
| | § | NO. 3-10-CV-0544-G |
| JOSE OLIVAS | § § | |
| Defendant. | § § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Jose Olivas, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be denied.

I.

Defendant pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Punishment was assessed at 105 months confinement followed by a two-year term of supervised release. His conviction and sentence were affirmed on direct appeal. *United States v. Olivas*, 337 Fed.Appx. 387, 2009 WL 1869933 (5th Cir. Jun. 29, 2009). Defendant now seeks post-conviction relief under 28 U.S.C. § 2255.

II.

In multiple grounds for relief, defendant criticizes various aspects of his legal representation from the entry of his guilty plea through sentencing. As best the court can decipher these claims, defendant appears to contend that: (1) his guilty plea was involuntary because defense counsel misrepresented that his sentence would not exceed 71 months; (2) counsel failed to file a motion to

suppress evidence; and (3) counsel did not present any evidence at sentencing to support her objection to a four-level enhancement under U.S.S.G. § 2K2.1(b)(6).

A.

On January 10, 2007, defendant was indicted by a federal grand jury on one count of possession of a firearm by a convicted felon. At his initial appearance before a magistrate judge, the court appointed the Federal Public Defender ("FPD") to represent defendant. Shortly thereafter, Assistant FPD Laura Harper was assigned to the case. In his section 2255 motion, defendant alleges that he asked Harper to file a motion to suppress certain evidence seized by the government. (*See* Def. Mot., Decl. at 1). Harper said that "the court wouldn't grant it because that was all the evidence the government had." (*Id.*). When defendant instructed Harper to file the motion anyway, she asked defendant to consider pleading guilty. (*Id.*). According to defendant, he was told by Harper that he could not prevail at trial because he was a convicted felon who possessed a firearm. (*Id.*). Harper then prepared a worksheet to show defendant his likely range of punishment under the sentencing guidelines. (*Id.* & Attch.). Based on his prior convictions and criminal history score, Harper estimated a potential sentence of 57-71 months if defendant pled guilty, as opposed to 77-96 months if he was convicted at trial. (*Id.* & Attch.). Defendant asked his attorney if 71 months "was the most I could get." (*Id.*). Harper allegedly responded, "Yes the worst case scenario would be 71 months." (*Id.*). Relying on that assessment of his likely punishment, defendant agreed to plead guilty to the gun charge. (*Id.*).

Defendant appeared in court for rearraignment on March 11, 2008. Before accepting his guilty plea, the judge had the prosecutor summarize the elements of the offense and informed the defendant of the range of punishment. (*See* Gov' Resp. App., Exh. 1 at 23-24, 25-26). Specifically, defendant was told that the maximum penalty for the offense was 10 years in prison, a fine not to

exceed $250,000 or twice any pecuniary gain to the defendant or loss to the victim, a supervised release term of not more than three years, and a $100 mandatory special assessment. (*Id.*, Exh. 1 at 25-26). Defendant testified that he understood the maximum penalties prescribed by law upon conviction. (*Id.*, Exh. 1 at 26). With respect to the calculation of his sentence, the judge told the defendant:

> Even though you have discussed the sentencing guidelines with your attorney, I am required to inform you under the Sentencing Reform Act of 1984, that the United States Sentencing Commission has issued guidelines for the judges to follow in each criminal case. Those guidelines have been determined now to be advisory on the Court.
>
> Even so, the Court is required to consider all the sentencing guidelines but may depart from the guidelines under some circumstances as long as the judge does so reasonably.
>
> The Court is not bound by facts that are stipulated between you and your attorney on the one hand and the government on the other. The Court can impose punishment that might disregard stipulated facts or take into account facts not mentioned in those stipulations. You might not be permitted to withdraw your plea[ ] of guilty in such an event.
>
> The Court will not be able to determine the guideline sentence for your case until after a presentence report has been prepared and you and the government have had an opportunity to challenge the facts and the conclusions reported by the probation officer.

(*Id.*, Exh. 1 at 20-21). Defendant acknowledged that he understood the judge's explanations about sentencing. (*Id.*, Exh. 1 at 22). Earlier in the hearing, the judge instructed the defendant that he "should never depend or rely upon any statement or promise by anyone, whether connected with law enforcement, the government, *your attorney* or anyone else, as to what the penalty will be." (*Id.*, Exh. 1 at 19) (emphasis added). The judge emphasized that:

> Should you decide to plead guilty, your plea of guilty must not be induced or prompted by any promises, pressure, threats, force, or

> coercion of any kind. A plea of guilty must be purely voluntary, and
> you should plead guilty only because you are guilty and for no other
> reason.

(*Id.*). When asked if anyone had made any promise or assurance of any kind to get him to plead guilty, defendant responded, "No, sir." (*Id.*, Exh. 1 at 25). The judge accepted defendant's guilty plea and scheduled a sentencing hearing for June 3, 2008. (*Id.*, Exh. 1 at 28-29).

Prior to sentencing, a federal probation officer prepared a Presentence Investigation Report ("PSI"). Although defense counsel had predicted a base offense level of 20, the PSI indicated that the semiautomatic firearm possessed by defendant had a large capacity magazine and defendant committed the gun offense after he was convicted of a drug felony, which made his base offense level 22. (*See id.*, Exh. 3 at 4, ¶ 19, *citing* U.S.S.G. § 2K2.1(a)(3)). In addition, the probation officer recommended a two-level enhancement because the gun was stolen, a four-level enhancement because defendant possessed the firearm in connection with another felony offense, and a two-level enhancement for obstruction of justice. (*Id.*, Exh. 3 at 4-5, ¶¶ 20, 21 & 24, *citing* U.S.S.G. §§ 2K2.1(b)(2), 2K2.1(b)(6) & 3C1.1). With a three-level reduction for acceptance of responsibility, (*see id.*, Exh. 3 at 5, ¶ 25, *citing* U.S.S.G. § 3E1.1(a) & (b)), the resulting offense level under the guidelines was 27, not 19 as counsel had told defendant. (*See id.*, Exh. 3 at 5, ¶ 26). Based on a total offense level of 27 and a criminal history score of 8, which placed him in Criminal History Category IV,[1] the probation officer determined that the applicable range of punishment under the sentencing guidelines was 100-120 months in prison. (*Id.*, Exh. 3 at 19).

Defense counsel objected to various parts of the PSI, including the four-level enhancement for possessing a firearm in connection with another felony offense and the two-level enhancement

---

[1] Defense counsel predicted that defendant would receive a criminal history score of 10, which would have placed him in Criminal History Category V. (*See* Def. Mot., Attch.).

for obstruction of justice. Those objections were argued by counsel at the sentencing hearing. (*Id.*, Exh. 2 at 3-12). After considering the objections, the court upheld the four-level enhancement, but sustained the objection to the two-level increase for obstruction of justice. (*Id.*, Exh. 2 at 8-9, 12). That reduced the base offense level from 27 to 25 and the guideline range from 100-120 months to 84-105 months. (*Id.*, Exh. 2 at 16-17). The judge sentenced defendant to 105 months based, in part, on his "effort to avoid apprehension by giving a false identity when he was apprehended[.]" (*Id.*, Exh. 2 at 18).

On direct appeal, defendant challenged his four-level enhancement under U.S.S.G. § 2K2.1(b)(6) on the ground that there was no evidence he committed another felony offense while in possession of a firearm. According to the PSI, "defendant made arrangements to sell the stolen firearms, which is a felony offense pursuant to Texas Penal Code § 31.03(a) & (b)(2)." (*Id.*, Exh. 3 at 4, ¶ 21). Defendant argued on appeal that there was no evidence he actually knew the firearms were stolen. In rejecting that argument, the Fifth Circuit wrote:

> Olivas is correct that the law requires actual subjective knowledge that the property is stolen for a conviction under § 31.03(b)(2). However, under Texas law, evidence that the defendant was in possession of recently stolen property, without a reasonable explanation, gives rise to a permissible inference of guilt. Although it is not sufficient proof of theft in itself, "evidence of 'unexplained possession of recently stolen property' may nonetheless be a circumstance to be considered in a sufficiency analysis."
>
> Olivas does not explain why he was in possession of stolen firearms. It was rational for the district court to infer guilty knowledge from Olivas's unexplained possession of the stolen firearms. While such an inference in itself is not sufficient proof for a theft conviction under the beyond a reasonable doubt standard, the standard of proof at sentencing is a preponderance of evidence. Based on the permissible inference drawn from Olivas's unexplained possession of stolen firearms, together with the corroborated information from the [confidential informant], we conclude that the district court's finding

is plausible in light of the record as a whole and is not clearly erroneous.

*Olivas*, 2009 WL 1869933 at *1 (internal citations omitted).

B.

The threshold issue presented by defendant in his section 2255 motion involves the validity of his guilty plea. It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998), *quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). A plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *See id.* at 627.

1.

A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (citing cases). "One of the most important duties of an attorney representing a

criminal defendant is advising the defendant about whether he should plead guilty." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), *citing Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965). An attorney discharges this duty by informing the defendant of the relevant circumstances and the likely consequences of a plea. *Id., citing Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). Advising a defendant about his potential exposure under the sentencing guidelines is necessarily part of this process. *Id.* However, an erroneous estimate by counsel as to the length of sentence, standing alone, does not vitiate an otherwise voluntary guilty plea. *See Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981). As noted by the Fifth Circuit:

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands.
>
> Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed.

*Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir.) (internal citations omitted) (emphasis in original), *cert. denied*, 123 S.Ct. 286 (2002), *abrog. on other grounds, Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). Only an actual promise by counsel that a lesser sentence will be imposed, as opposed to an erroneous prediction of leniency, renders a guilty plea involuntary. *See, e.g. Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989); *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987).

2.

The record in this case shows that Assistant FPD Laura Harper mistakenly calculated a guideline range of 57-71 months if defendant pled guilty. (*See* Def. Mot., Decl. at 1 & Attch.). In making that calculation, Harper failed to account for a two-level enhancement because the

semiautomatic firearm possessed by defendant had a large capacity magazine and defendant committed the gun offense after he was convicted of a drug felony, and a four-level enhancement because defendant possessed the firearm in connection with another felony offense. In fact, the punishment range in this case was 84-105 months, not 57-71 months as Harper predicted. Although counsel misadvised defendant about his potential exposure under the sentencing guidelines, this erroneous advice does not render his guilty plea involuntary. Significantly, Harper never *promised* defendant a particular sentence if he pled guilty. Rather, she only *predicted* a likely range of punishment. Even her statement that "the worst case scenario would be 71 months" does not rise to the level of an actual promise.

Moreover, the court admonished defendant before accepting his guilty plea as to the statutory maximum punishment and the effect of the sentencing guidelines. Defendant was told that the maximum punishment upon conviction was 10 years confinement, which is 15 months less than the sentence he ultimately received. The judge also informed defendant that the court would not be able to determine what guidelines apply in this case until after it reviewed the PSI. Defendant indicated that he understood his sentence exposure and the effect of the guidelines. Perhaps most importantly, defendant told the judge that no one had forced him to plead guilty or made any promises to induce his plea. In light of this sworn testimony, defendant cannot show that his guilty plea was the result of assurances by defense counsel regarding the length of his sentence. *See, e.g. Bernard v. United States*, No. 3-08-CV-1352-G, 2008 WL 5329315 at *4 (N.D. Tex. Dec. 19, 2008), *COA denied*, No. 09-10168 (5th Cir. Jan. 11, 2010) (erroneous prediction by counsel that defendant would likely receive 27-46 months in prison, instead of 97 months, did not render guilty plea involuntary); *United States v. Casey*, No. 3-04-CV-2347-D, 2007 WL 2706269 at *4-5 (N.D. Tex. Sept. 17, 2007) (failure of defense counsel to investigate criminal history before estimating range of punishment under the

sentencing guidelines did not render guilty plea involuntary where court properly admonished defendant under Rule 11 before accepting the plea).

C.

A voluntary guilty plea waives all non-jurisdictional defects in a criminal proceeding. *See Tollett v. Henderson*, 411 U.S. 258, 265, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973). This includes instances of ineffective assistance of counsel that do not implicate the validity of the plea itself. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.), *cert. denied*, 121 S.Ct. 282 (2000). Because defendant pled guilty, he cannot seek post-conviction relief on the ground that his attorney failed to file a motion to suppress evidence. *See Clarke v. Cain*, 85 F.3d 624 (Table), 1996 WL 255287 at *2 (5th Cir. May 1, 1996).

D.

Finally, defendant criticizes his attorney for not presenting any evidence to support her objection to a four-level enhancement under U.S.S.G. § 2K2.1(b)(6). The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler*, 100 S.Ct. at 1716. In order to obtain post-conviction relief due to ineffective assistance of counsel during the punishment phase of a non-capital case, a defendant must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. *Id.*, 104 S.Ct. at 2064-65. Second, the defendant must establish prejudice -- that he was subjected to increased jail time due to the deficient performance of his attorney. *See United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004), *citing Glover*, 121 S.Ct. at 700.

At sentencing, defense counsel objected that there was no evidence defendant had "actual subjective knowledge" that the firearms found in his possession were stolen. (*See* Gov't Resp. App., Exh. 2 at 9). In support of that objection, counsel argued:

> The evidence the government is pointing to is some confidential informant who said that a man named Mexican Joe was going to arrange a sale of some possibly stolen weapons. There is no evidence that Mr. Olivas is Mexican Joe. In his listed aliases, Mexican Joe didn't appear. There is no evidence from the confidential source that she identified Mr. Olivas as Mexican Joe, the man who arranged this sale. From all we know from the evidence the government has, Mr. Olivas was the delivery man. These guns were in a canvas bag, in a duffle bag, zipped up in the back seat of a car. No ammunition with them. And again, as I say, there is no evidence that Mr. Olivas was anything other than the man Mexican Joe, whoever he might be, sent to take these weapons. Meaning, that we cannot impute knowledge of the fact that they were stolen. Mr. Olivas has admitted that he knew they were weapons. He admitted it in his plea of guilty here. But there has not been admission from the date he was arrested to today that he knew the weapons were stolen, and I don't believe the information the government has is sufficient to prove actual subjective knowledge, and that is what the state court requires, not just that he should have known or might have known or could have known. He actually did. That's what is required by the State of Texas to prove a violation of 31.03(b) which the government is alleging, and for that reason I believe it is insufficient to support a four-level enhancement for possession of weapons in connection with a felony.

(*Id.*, Exh. 2 at 10-11). Although defendant faults his attorney for failing to subpoena a "Deputy Watson," the missing testimony proffered by defendant is not helpful to him. According to defendant, Watson would have testified that an informant told him that defendant "wanted to sell possibly stolen weapons." (*See* Def. Mot. Br. at 4). Such testimony would have helped the government prove that defendant knew the weapons were stolen. To the extent defendant argues that the government failed to meet its burden of proving a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), that argument was rejected on direct appeal.

## **RECOMMENDATION**

Defendant's motion to correct, vacate, or set aside sentence should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 20, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE